UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
GREGORY PEPE,

                            Plaintiff,                         Index No.:

      -against-                                    **COMPLAINT**
                                                                                    *Jury Trial Demanded*

SUFFOLK COUNTY DEPARTMENT OF
CIVIL SERVICE,

                            Defendant.
--------------------------------------------------------------------------X

      Plaintiff, GREGORY PEPE, by and through his attorneys, LIEB AT LAW, P.C., as and for his complaint against the above-named Defendant, respectfully alleges as follows:

## NATURE OF THE CASE

1. This is an employment discrimination case against Defendant SUFFOLK COUNTY DEPARTMENT OF CIVIL SERVICE pursuant to the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq* and the New York State Human Rights Law.

2. Plaintiff alleges that he was discriminated against based on his disability by Defendant for failing to provide him with a reasonable accommodation and retaliated against him for voicing his opposition to Defendant for its failure to accommodate him.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and §§ 1343(a)(3) and (4), as this action seeks redress for the violations of Plaintiff's civil rights pursuant to applicable federal statutes and regulations.

4. This Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's claims under New York State Human Rights Law, N.Y. Exec. Law Article 15, ("NYSHRL").

5. Venue is proper in this matter pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to these claims occurred in the Eastern District of New York.

6. Plaintiff has properly exhausted his administrative remedies. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 6, 2020. Plaintiff received a Notice of Right to Sue Letter from the EEOC on or around February 23, 2022 and has timely filed this Complaint within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

7. A copy of the Notice of Right to Sue is attached hereto as Exhibit "A".

## PARTIES

8. Plaintiff, GREGORY PEPE, is a resident of Suffolk County. At all times relevant, Plaintiff was a "job applicant" of Defendant, pursuant to the ADA; and a "prospective employee" of Defendant, pursuant to the NYSHRL.

9. Defendant SUFFOLK COUNTY DEPARTMENT OF CIVIL SERVICE ("SUFFOLK") is a municipal corporation incorporated under the laws of the State of New York with a principal location at 725 Veterans Memorial Highway, North County Complex, Bldg. 158, Hauppauge, NY 11788.

## FACTS

10. Plaintiff was a job applicant of SUFFOLK for the position of Correction Officer I.

11. Plaintiff suffers from chronic migraine disability that affects his daily life activities.

12. Plaintiff additionally suffers from a learning disability that affects his daily life activities.

13. Plaintiff's condition is aggravated and exacerbated by repetitive motion, prolonged positioning either sitting or standing, and vigorous physical activity.

14. On April 1, 2019, Plaintiff applied for the position of Correction Officer I with SUFFOLK.

15. Plaintiff informed SUFFOLK of his disability and requested a reasonable accommodation for the job applicant testing required for the position.

16. On November 7, 2019, Plaintiff received two doctor's letters. The first doctor's letter was from Stony Brook Medicine, Department of Neurology signed by Christopher Stoebe, PA-C and Rahman Pourmand, MD and the second doctor's note was signed by Richard F. Michalowicz, MD, diagnosing Plaintiff's medical condition and his need for a reasonable accommodation when taking the agility test for the Corrections Officer I position.

17. Doctor Pourmand and Doctor Michalowicz stated in the aforementioned letters that Plaintiff could perform the essential elements of the Corrections Officer I position, and that Plaintiff's condition would not serve as a potential source of danger or compromise to his coworkers or himself, should he be employed in law enforcement.

18. Doctor Pourmand and Doctor Michalowicz further stated various concerns regarding how certain elements of the agility test for men ages 20-29 would aggravate or exacerbate Plaintiff's disability.

19. Specifically, the speed at which Plaintiff would need to do sit-ups may cause a strain of the paraspinal musculature in Plaintiff's neck, including a migraine.

20. Additionally, Doctor Pourmand and Doctor Michalowicz state in their letters that the rate of time in which Plaintiff was required to run 1.5 miles would increase strain to Plaintiff's neck and blood flow to the head which would induce migraines.

21. Based on supporting medical opinions/documentation from the Stony Brook, Department of Neurology and Doctor Michalowicz, Plaintiff requested an accommodation that he should be permitted to take the agility test based on the standard for a 60+ year old female.

22. On November 13, 2019, Plaintiff appeared on time for the agility test at Suffolk County Community College for the Correction Officer I position.

23. The Plaintiff informed a Police Officer Instructor overseeing the physical agility test that he had not filled out the medical release form because his doctors recommended reasonable accommodations for his disability.

24. Plaintiff was then taken into a separate room by SUFFOLK and questioned by two officers (one male and one female) in the Sheriff's department regarding why Plaintiff failed to fill out the paperwork.

25. Plaintiff explained to the officers in the room that the doctors did not fill out the paperwork because his doctors were seeking recommendations for reasonable accommodation for his disability as there are different standards and cut off scores based on sex/gender and there is no maximum age cut off for the job position. Plaintiff presented his doctor's letter from Dr. Richard F. Michalowicz, regarding the Medical Release Form (required paperwork needed to be completed by each job applicant's physician in order to participate in the physical agility test) dated November 7, 2019, which stated "due to the standards that are given for a male candidate age 20-29 years of age on the medical release form, I will not be able to sign the physical agility test as it stands now. If accommodations that I stated in my previous letter are met, then I can sign off on Mr. Pepe's medical release form."

26. Plaintiff provided the male officer the doctor's note and Medical Release Form then explained to the two officers that because of his disability he should be provided with a reasonable accommodation.

27. The male officer reviewed the doctor's note and medical release form. While reading the documents the officer began shaking his head and laughing. The Officer told Plaintiff to take a seat and that he needed to discuss this with the other officers.

28. The male officer and the female officer left the room and Plaintiff overheard their conversation. The male officer said that they never provided reasonable accommodations before on the physical screen test and the female officer said to just deny the request.

29. Approximately six officers including the two previously in the room entered the room where the Plaintiff was sitting.

30. The male officer who was previously in the room then threw the paperwork at the Plaintiff and said they are not giving Plaintiff any accommodations on the physical screen test and Plaintiff will have to perform at his age and gender standards and if the Plaintiff fails the test, then he will be cut from further consideration.

31. The same male officer, in response to Plaintiff's further request for a reasonable accommodation, said because your doctor refused to fill out the paperwork according to the directions, you are therefore disqualified from the competition for the job.

32. Plaintiff then requested that the officers provide him with a denial letter explaining the reason for them not providing him with a reasonable accommodation.

33. The officers refused to provide the requested denial letter.

34. Plaintiff again requested a denial letter.

35. In response to Plaintiff's further request for a denial letter, the six officers placed their hands on their guns and encircled the Plaintiff and began screaming derogatory and discriminatory expletives at the Plaintiff, which included "fucking retard," "moron," "asshole," "troublemaker," "unable to fucking read and misinterpreting the law," and "what is your fucking end game?"

36. In response to the berating by the Officers, Plaintiff stated he wanted the opportunity to exercise his civil right to be hired according to the hiring procedure process of the Americans with Disability Act Law for individuals with disabilities but otherwise qualified.

37. Plaintiff felt intimidated, threatened and scared when the officers placed their hands on their guns and made disparaging statements to the Plaintiff.

38. Plaintiff then asked the Sergeant of the Police Department to write a police report of the incident with the Sherriff's Department and create a record of what transpired.

39. The officers from the Sheriff Department then assigned an employee of SUFFOLK to talk to Plaintiff about his request for a reasonable accommodation.

40. The employee of SUFFOLK, Jennifer Van Essendelft, a Personnel Analyst, then appeared and provided Plaintiff with the following two (2) options:

    1) Plaintiff must perform the agility test with the parameters for men ages 20-29 years old bracket; or

    2) If Plaintiff's doctor feels that Plaintiff is unable to perform the agility test then Plaintiff would only be able to work in the jail cleaning toilets, mopping floors, taking out trash, or being the jail cook.

41. Neither of these options constituted a reasonable accommodation.

42. Ms. Essendelft then told Plaintiff he should feel grateful they provided him with a reasonable accommodation for the written test on April 27, 2019.

43. Plaintiff then attempted to address the ADA law and Defendant's failure to abide by it, but each time he tried to explain that he was entitled to reasonable accommodations, officers from the Sherriff's department responded, "you are not fucking entitled" and "the agency is not required

to give reasonable accommodations at all" and "we don't have to follow the Americans with Disabilities Act Law."

44. Plaintiff asked Jennifer Van Essendelft to provide a written statement of denial of accommodation for the physical agility test.

45. Jennifer Van Essendelft then signed and provided a denial letter explaining that Plaintiff was not granted accommodations for his disability regarding the agility test.

46. At the conclusion of the meeting with SUFFOLK, the Sergeant in the Suffolk Police Department escorted Plaintiff out of Suffolk County Community College.

47. Plaintiff was, thus, unable to take the agility test which precluded him from being hired for the Correction Office I position.

48. Plaintiff endured severe emotional distress as a result of this predicament.

49. As a result of Defendant's discriminatory conduct, Plaintiff became extremely anxious and feared for his life as a result of the officers from the Sherriff's department placing their hands on their guns and screaming profanity at the Plaintiff when he merely objected to Defendant failing to provide him with a reasonable accommodation.

### AS AND FOR A FIRST CAUSE OF ACTION
*(American with Disabilities Act - Failure to Accommodate/Disability Discrimination)*

50. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "49" hereof as if more fully set forth herein.

51. Plaintiff is a covered "job applicant" under the ADA.

52. Defendant is a covered "employer" under the ADA.

53. Plaintiff was, at all relevant times, an individual with a disability pursuant to the ADA. Specifically, Plaintiff has a physical impairment that substantially limits one or more of his

major life activities, has a record of such impairment, and/or is regarded by defendants as having such impairment.

54. The American with Disabilities Act ("ADA") prohibits discrimination against a qualified individual on the basis of disability in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment. 42 U.S.C. §§ 12112.

55. Plaintiff is a qualified individual with a disability pursuant to the ADA as Plaintiff could perform the essential functions of his position with a reasonable accommodation.

56. Defendant was aware of Plaintiff's disability as he submitted multiple requests for a reasonable accommodation and explained his condition.

57. Defendant failed to grant Plaintiff a reasonable accommodation or engage in a good faith dialogue with Plaintiff prior to offering accommodations, none of which were reasonable.

58. Defendant refused to provide Plaintiff a reasonable accommodation for the Cooper Test (agility test) on the basis of gender/sex standards.

59. Defendant discriminated against Plaintiff based on his disability by failing to accommodate Plaintiff so he could complete the agility test.

60. Defendant's refusal to provide Plaintiff with a reasonable accommodation caused Plaintiff to lose the opportunity to gain employment.

61. Defendant intentionally refused to accommodate Plaintiff and forced Plaintiff to be disqualified because his doctor would not provide a medical release form allowing him to take the agility test without the requested accommodation.

62. As a result of Defendant's unlawful actions, committed with malice or reckless indifference, Plaintiff has suffered, loss of income/employment, emotional distress, pain and suffering, humiliation and embarrassment.

## AS AND FOR A SECOND CAUSE OF ACTION
(*American with Disabilities Act – Retaliation*)

63. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 62 of the complaint.

64. Plaintiff is a qualified individual with a disability pursuant to the ADA.

65. Defendant is a covered "employer" under the ADA.

66. Plaintiff requested a reasonable accommodation from Defendant.

67. In response to Plaintiff's request and his subsequent requests and complaints as a result of his requests being denied, Defendant retaliated against Plaintiff by continuing to deny his repeated requests for a reasonable accommodation, threatening Plaintiff with guns for mentioning the ADA, mocking Plaintiff by suggesting he should be a jail cook or jail janitor, shouted profanities at Plaintiff – invoking his disability - for mentioning the ADA, insulting Plaintiff with disparaging remarks as a way to make Plaintiff believe that Defendant was not in violation of the ADA, and laughing at the Plaintiff for requesting to be accommodated as a 60+ female.

68. Defendant intentionally created an intolerable hiring testing environment for Plaintiff that disqualified him from the job position.

69. As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, pain and suffering, humiliation and embarrassment, loss of income/employment.

## AS AND FOR A THIRD CAUSE OF ACTION
(*NYSHRL – Failure to Accommodate/Disability Discrimination*)

70. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 69 of the complaint.

71. N.Y. Exec. Law §296(3)(a) provides: That it is "an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities, of a prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

72. Plaintiff is a prospective employee with a disability pursuant to NYSHRL.

73. Defendant is an employer pursuant to NYSHRL.

74. Plaintiff was qualified for the position.

75. Plaintiff requested a reasonable accommodation from Defendant.

76. Defendant was aware of Plaintiff's disability as he submitted multiple requests for a reasonable accommodation and explained his condition.

77. Defendant refused to provide Plaintiff with a reasonable accommodation to take the physical agility test.

78. Providing reasonable accommodations would not result in Defendant suffering an undue hardship pursuant to N.Y. Exec. Law §296(3)(b).

79. Defendant refused to provide Plaintiff a reasonable accommodation for the Cooper Test (agility test) on the basis of gender/sex standards.

80. Defendant discriminated against Plaintiff based on his disability by failing to accommodate Plaintiff so he could complete the agility test.

81. Defendant's refusal to provide Plaintiff with reasonable accommodation caused Plaintiff to lose opportunity to gain employment.

82. Defendant intentionally refused to accommodate Plaintiff and forced Plaintiff to be disqualified because his doctor would not provide a medical release form allowing him to take the agility test without the requested accommodation.

83. As a result of Defendant's unlawful actions, committed with malice or reckless indifference, Plaintiff has suffered, loss of income/employment, emotional distress, pain and suffering, humiliation and embarrassment.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (*NYSHRL – Retaliation*)

84. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 83 of the complaint.

85. N.Y. Exec. Law §296(7) provides: That it is "an unlawful discriminatory practice for any person engaged in any activity to which New York Executive Law section 296 applies to retaliate or discriminate against any person because he has opposed any practices forbidden under New York State Human Rights Law or because he has filed a complaint, testified, or assisted in any proceeding under New York State Human Rights Law."

86. Plaintiff is a qualified individual with a disability pursuant to NYSHRL.

87. Defendant is a covered "employer" under the NYSHRL.

88. Plaintiff requested a reasonable accommodation from Defendant.

89. In response to Plaintiff's request and his subsequent requests and complaints as a result of his requests being denied, Defendant retaliated against Plaintiff by continuing to deny his repeated requests for a reasonable accommodation, threatening Plaintiff with guns for mentioning the

ADA, mocking Plaintiff by suggesting he should be a jail cook or jail janitor, shouting profanities – invoking his disability - at Plaintiff for mentioning the ADA, insulting Plaintiff with disparaging remarks as a way to make Plaintiff believe that Defendant was not in violation of the ADA, and laughing at the Plaintiff for requesting to be accommodated as a 60+ female.

90. Defendant intentionally created an intolerable hiring testing/environment for Plaintiff that disqualified him from the job position.

91. As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, pain and suffering, humiliation and embarrassment, loss of income/employment.

## DEMAND FOR JURY TRIAL

92. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "91" of the Complaint hereof as if fully set forth herein.

93. Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendant, with interest, costs and disbursements of this action as follows:

(1) On the First, Second, Third, and Fourth Causes of Action, the maximum amount under the law plus interest;

(2) Punitive damages;

(3) Pre and post judgment interest;

(4) Plaintiff's attorneys fees and costs;

(5) Any further relief the Court finds just and proper.

Dated: Smithtown, New York
      May 24, 2022

                                    LIEB AT LAW, P.C.

                                    /s/ Mordy Yankovich
                                    Mordy Yankovich, Esq.
                                    *Attorneys for Plaintiff*
                                    308 W. Main Street, Suite 100
                                    Smithtown, NY 11787
                                    (646) 216-8009
                                    Mordy@Liebatlaw.com