FILED
CLERK

11:59 am, Sep 04, 2025

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GREGORY PEPE,

                Plaintiff,

      - against -

THE COUNTY OF SUFFOLK,

                Defendant.
----------------------------------------------------------------X

MEMORANDUM
AND ORDER

Civil Action
No. 22-03058 (GRB)(AYS)

**GARY R. BROWN, United States District Judge**:

Presently before the Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Docket Entry ("DE") 34. For the reasons stated herein, the motion is GRANTED in part and DENIED in part.

## Background

Plaintiff Gregory Pepe ("plaintiff") brings this action against the County of Suffolk ("defendant") for violations of the Americans with Disabilities Act (the "ADA") and the New York State Human Rights Law (the "NYSHRL") alleging principally that defendant discriminated against him based on his disability.

The dispute centers on plaintiff's application process for the position of Correction Officer I. Plaintiff, who suffers from migraines, alleges that defendant discriminated against him by denying his requested accommodation for the physical fitness screening test and retaliated against him for requesting that accommodation.

Plaintiff applied for the position of Correction Officer I with the Suffolk County Sheriff's Office through the Suffolk County Department of Civil Service on or around February 1, 2019. DE 34-27 at ¶ 2. The first step in plaintiff's application process was a written examination. *Id.*

1

at ¶¶ 2-3.  Plaintiff passed the written examination with accommodations permitting him to take the examination in a separate room with a reader and extra time.  *Id.* at ¶¶ 4-6.  Plaintiff then advanced to the next stages of the process, including an interview and the physical fitness screening test.  *Id.* at ¶¶ 6-10.

Plaintiff completed the interview in early November 2019 and was scheduled to appear for the physical fitness screening test on November 13, 2019.  *Id.* at ¶ 10.  Prior to that day, plaintiff received written correspondence from defendant informing him, in relevant part, that a medical professional must review, sign and stamp defendant's Medical Release Form.  *Id.* at ¶ 11.

On the day of the physical fitness screening test, plaintiff appeared with two letters from his physician, Dr. Richard F. Michalowicz, which advised defendant of plaintiff's "chronic migraine headaches."  DE 34-34.  Dr. Michalowicz recommended that, because of those migraines, plaintiff be permitted to complete the physical fitness screening test according to the standards for a "60+ year old female" even though plaintiff was a 29-year-old male at the time. DE 34-34; DE 34-27 at ¶ 12.  Pursuant to the physical fitness screening test standards enumerated by the New York State Municipal Police Training Counsel, a 29-year-old male must complete 38 sit-ups, 29 push-ups, and a 1.5 mile run in no more than 12 minutes and 38 seconds.  DE 34-22; DE 34-27 at ¶ 13.  Females ages 60 and above need only complete six sit-ups, zero push-ups, and a 1.5 mile run in no more than 20 minutes and 16 seconds.  DE 34-22.  Dr. Michalowicz noted that if defendant accommodated plaintiff accordingly, he could then sign the Medical Release Form.  DE 34-34.

Officers advised plaintiff that defendant does not afford accommodations for the physical fitness screening test.  DE 34-27 at ¶ 23.  Plaintiff requested a written statement as to why

defendant denied the accommodation, and a representative of defendant provided a note stating that plaintiff was not allowed "special accommodations" for the physical fitness screening test. *Id.* at ¶¶ 24, 27.

Plaintiff testified during his deposition that after he alerted corrections officers that defendant was not complying with the ADA, the officers laughed at him, yelled profanities at him, and circled him with their hands on their guns.  DE 34-32 at 73-75.

Plaintiff commenced this action against defendant on May 24, 2022.  *See* Complaint, DE 1.  The Amended Complaint is the operative complaint and contains four causes of action pleaded under the ADA and NYSHRL for failure to accommodate/disability discrimination and retaliation.  *See* DE 14.  Defendant now moves for summary judgment.  *See* DE 34.

## Standard of Review

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

## Discussion

I.  *Exhibits Submitted After Close of Discovery*

As a threshold issue, defendant argues that certain exhibits attached to plaintiff's opposition papers should not be considered by the Court because the exhibits were not produced during discovery.  DE 34-50 at 2-3.  The exhibits include three pages of medical records each marked with a "Print Date/Time" of June 20, 2024, and individual page numbers apparently extracted from a larger batch of pages.  *See* DE 34-46 ("Page 24 of 49"); DE 34-47 ("Page 4 of

3

40"); and DE 34-48 ("Page 18 of 38").  Although discovery in this matter had not closed as of June 20, 2024, plaintiff allegedly never provided the three exhibits to defendant.  DE 34-50 at 1.

Federal Rule of Civil Procedure 37(c)(1) states in relevant part that "[i]f a Party fails to provide information . . . as required by Rules 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion."  Fed. R. Civ. P. 37(c)(1).  The remedy of precluding unproduced discovery seeks "to prevent the 'sandbagging' of an opposing party with new evidence."  *BF Advance, LLC v. Sentinel Ins. Co., Ltd.*, No. 16-CV-5931 (KAM) (JO), 2018 WL 4210209 at *6 (E.D.N.Y. Mar. 20, 2018) (citation omitted).  However, "where there is an 'absence of prejudice' to the complaining party, courts have allowed the admission of 'harmless' evidence."  *Id.* (citation omitted).

Here, while plaintiff could have provided the unproduced exhibits to defendant prior to the close of discovery, review of the exhibits reveals an "absence of prejudice" to defendant.  As defendant notes, "[DE 34-46] . . . merely states that: 'The patient is a 27 YOWM with a past history of chronic, intractable migraine headaches'"; "[DE 34-47] . . . appears to be a generalized form which provides information concerning migraine headaches"; and DE 34-48 references a singular instance where plaintiff had a "major migraine" and mentions that plaintiff's "daily problem is just a little light sensitivity."  DE 34-50 at 2.  The Court finds that the exhibits do not contain any new or additional information, and thus, considering them would be harmless.

II. *ADA Failure to Accommodate Claim*

It is well settled that to establish a prima facie case of disability discrimination under the ADA based on a failure to accommodate, the plaintiff must show that "(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the employee] could perform the essential

4

functions of the job at issue; and (4) the employer has refused to make such accommodations." *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (citations omitted). While failure to accommodate claims typically arise when an individual is already an employee, the ADA extends protection against discrimination to individuals during the job application process as well. *Frilando v. New York City Transit Auth.*, 463 F. Supp. 3d 501, 514 (S.D.N.Y. 2020) (citing 42 U.S.C. § 12112(a)). Here, plaintiff's ADA claim fails because he cannot show issues of fact as to whether he is disabled under the ADA or as to whether he could perform the essential functions of the position.

    a.   <u>Whether Plaintiff is Disabled Under the ADA</u>

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102 (1)(A). To qualify as disabled under the ADA, a plaintiff must suffer from an impairment that "'substantially limits' [a] major life activity." *McDonald v. City of New York*, 786 F. Supp. 2d 588, 606 (E.D.N.Y. 2011). "An impairment substantially limits a major life activity other than work if it prevents an individual from performing an activity that the average person in the general population can perform, or if it significantly restricts the duration, manner, or condition under which an individual can perform the activity as compared to the ability of the average person in the general population." *McCowan v. HSBC Bank USA, N.A.*, 689 F. Supp. 2d 390, 399-400 (E.D.N.Y. 2010). Further, "[t]o determine whether a limitation is 'substantial,' courts consider the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of or expected long term impact of . . . the impairment." *Ivankovskaya v. Metro. Transportation Auth. Bus Co.*, No. 15-CV-5727 (AMD) (MDG), 2017 WL 3328166 at *4 (E.D.N.Y. Aug. 3, 2017) (citations and quotations omitted).

5

Even though "the substantial-limitation requirement in the definition of 'disability' is not an exacting one," *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020), it is undisputed that plaintiff's migraines do not substantially limit any major life activity. *See* DE 34-33; DE 34-34; DE 34-18. For example, plaintiff relies on a letter signed by a physician assistant and a doctor from Stony Brook University Medical Center's Department of Neurology in which they state that plaintiff's "migraine condition should be considered a partial disability but one that can be overcome." DE 34-33. Another medical record provides that plaintiff's "[m]igraines continue to be under generally excellent control" and he "[has]n't had any major headaches." DE 34-18. That same medical record also provides that while training for the physical fitness screening test, plaintiff completed a 1.5 mile run in about 24 minutes, 20 sit-ups, and 12 pushups. *Id.* Plaintiff stated that "it was bearable for [his] body" to reach those numbers, and he classified his pain level as a three out of ten while completing the physical activities. *Id.* Plaintiff's admission that he performed such physical activity "cannot support a finding by a rational factfinder that plaintiff was substantially limited in the major life activit[y] of . . . standing." *McDonald v. City of New York*, 786 F. Supp. 2d 588, 608 (E.D.N.Y. 2011).

Plaintiff relies on the same medical records to show that his condition substantially limits his ability to sit. However, those records merely state, in conclusory fashion and without any detail as to the duration or severity of the impairment's impact, that prolonged sitting aggravates his condition. *See* DE 34-33; DE 34-34; DE 34-18. "Such 'vague and ambiguous' evidence concerning plaintiff's inability to sit is insufficient to withstand a motion for summary judgment." *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 137 (E.D.N.Y. 2015) (citation omitted).

In addition, plaintiff testified at his deposition that he only experiences migraines once a year, with the intervals between migraines sometimes lasting even longer than that. DE 34-32 at 56:25-57:11. Plaintiff further testified that he takes medications for his migraines only "as needed," and that he receives Botox injections twice per year. *Id.* at 6:12-17; 7:18-19. Given the relative ease with which adults can obtain over-the-counter ibuprofen or aspirin to treat migraines "as needed," plaintiff's testimony is insufficient to show that "[his] affliction is any worse than is suffered by a large portion of the nation's adult population." *Fitzgerald v. We Co.*, No. 20-CV-5260 (AT), 2022 WL 952963 at *8 (S.D.N.Y. Mar. 30, 2022) (quoting *Colwell v. Suffolk Cty. Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998)).

Accordingly, because plaintiff has not demonstrated an issue of fact as to whether he suffers from a disability under the ADA, defendant's motion for summary judgment on plaintiff's disability discrimination claim is granted.

However, even if plaintiff could be considered disabled under the ADA, he has also failed to demonstrate an issue of fact as to whether he could perform the essential functions of the Correction Officer I position even with a reasonable accommodation.

    b.  <u>Whether Plaintiff Could Perform the Essential Functions of the Job</u>

An analysis of whether a plaintiff can perform the essential functions of a job is "a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (citations omitted). Moreover, when analyzing whether a plaintiff can perform the essential functions of his position, "[the] court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998).

7

As stated in the examination standards for the physical fitness screening test, "although these elements [of the physical fitness screening test] may not be directly representative of essential job functions to be performed . . . such elements do measure the candidate's physiological capacity to learn and perform essential job functions." DE 34-22. Notably, defendant's list of "Essential Job Elements" for the Correction Officer I position includes "[s]uccessful[] complet[ion] [of] all training requirements, including . . . physical fitness." DE 34-36.

Plaintiff avers that because "the essential job functions for both male and female Correction Officer I positions are the same regardless of age/gender," and he could perform the physical fitness screening test under the standards for a 60-year-old female, he has shown an issue of fact as to whether he can perform the essential functions of the position. DE 34-28 at 10. However, plaintiff conflates the applicable standards for the physical fitness screening test and the essential job functions of the Correction Officer I position. Plaintiff's argument is inherently one that sounds in age and gender discrimination, which he does not allege in his Complaint or Amended Complaint. In fact, Magistrate Judge Shields denied plaintiff's application to further amend his Complaint to include such claims for age and gender discrimination. *See* Order Dated July 15, 2024. The propriety of the different minimum physical fitness standards for males and females of different ages is not at issue here, and plaintiff cannot use his disability discrimination claim as a vehicle to challenge those standards.

Since the physical fitness screening test "measure[s] the candidate's physiological capacity to learn and perform essential job functions," and because plaintiff has not shown that he could complete the physical fitness screening test according to the standards for his age and

8

gender, plaintiff has not shown a genuine issue of fact as to whether he could perform the essential functions of the position. DE 34-22.

Because plaintiff fails on two of the four requirements for demonstrating disability discrimination under the ADA, defendant's motion for summary judgment is granted on the ADA discrimination claim.

### III. *ADA Retaliation Claim*

At the outset, the Court notes that "prevailing on the disability discrimination claim under the ADA is not a prerequisite to prevailing on a retaliation claim under the ADA." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 439 (E.D.N.Y. 2015) (citation omitted). "The elements of a retaliation claim under . . . the ADA are (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff, and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir 2019) (citations and internal quotations omitted).

Requests for accommodation and even informal complaints of discrimination qualify as protected activity under the ADA. *See Weixel v. Bd. of Educ. of City of New York,* 287 F.3d 138 (2d Cir. 2002); *Sherman v. Cnty. of Suffolk*, 71 F. Supp. 3d 332, 352 (E.D.N.Y. 2014). An adverse course of action includes "'any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 149 (E.D.N.Y. 2018) (quoting *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 90 (2d Cir. 2015)). A plaintiff must also show a causal connection between engaging in protected activity and incurring an adverse action either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, . . . or (2) directly, through evidence

9

of retaliatory animus directed against the plaintiff by the defendant." *Natofsky*, 921 F.3d at 353 (citations and quotations omitted). Close temporal proximity to plaintiff's request for an accommodation "is sufficient to support an inference of retaliation." *Tafolla v. Heilig*, 80 F.4th 111, 126 (2d Cir. 2023).

Here, issues of fact exist as to whether plaintiff suffered an adverse action as a result of engaging in a protected activity. By submitting letters from his physician requesting an accommodation and subsequently complaining that defendant failed to comply with the ADA, plaintiff engaged in protected activity and put defendant on notice that he was engaged in protected activity. DE 34-34; DE 34-32 at 73:18-74:10. Immediately following plaintiff's complaint, plaintiff avers that defendant's employees circled him while holding their guns, shouted disparaging remarks and profanities at him, and even threatened his life. *Id.* at 74:11-25.

Defendant argues that plaintiff acted unreasonably by failing to submit a Medical Release Form signed by his physician, implying that plaintiff created the situation that he complains of. *See* DE 34-1 at 21. Defendant also offers an affidavit from a Corrections Investigator who flatly denies plaintiff's recollection of events and points out that plaintiff did not take note of the officers' names who engaged in this behavior, nor did he depose any of those officers. DE 34-50 at 7-8. Such competing assertions and evidence reveal issues of fact.

Accordingly, defendant's motion for summary judgment on plaintiff's ADA retaliation claim is denied.

IV.  *Plaintiff's State Claims Under NYSHRL*

The analysis for ADA and NYSHRL claims is nearly identical. *See Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 350 (E.D.N.Y. 2010). However, the NYSHRL's "definition of disability is more expansive than the one under the ADA as it does not require that a disability be

10

substantially limiting to a major life activity." *Gonzalez v. Wicked Taco LLC*, No. 23-CV-9555 (JAM), 2025 WL 353972 at *21 (E.D.N.Y. Jan. 31, 2025).

As to retaliation claims, "[t]he same standards govern retaliation under . . . the NYSHRL, [] as well as under the ADA." *Luzunaris v. Baly Cleaning Servs.*, No. 23-CV-11137 (GHW) (RFT), 2024 WL 3926708 at *19 (S.D.N.Y. July 29, 2024), report and recommendation adopted sub nom. *Luzunaris v. Baly Cleaning Servs. Inc.*, No. 23-CV-11137 (GHW) (RFT), 2024 WL 3925919 (S.D.N.Y. Aug. 22, 2024).

Here, as discussed with regard to the ADA discrimination claim, the undisputed evidence shows that plaintiff could not perform the essential functions of the position regardless of whether he received an accommodation to take the physical exam.

However, with regard to plaintiff's NYSHRL retaliation claim, there are issues of fact for the reasons discussed in connection with the ADA retaliation claim.

Accordingly, the Court grants defendant's motion for summary judgment on plaintiff's NYSHRL discrimination claim but denies defendant's motion for summary judgment on plaintiff's NYSHRL retaliation claim.

V.     *Conclusion*

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

**SO ORDERED.**

Dated: Central Islip, New York
September 4, 2025

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge

11